UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X   Case No. 7:23-cv-06432

ANDREA CHRISJOHN,

                         Plaintiff,                          **COMPLAINT**

          - against -

THE COUNTY OF DUTCHESS, THE DUTCHESS     **PLAINTIFF DEMANDS**
COUNTY PUBLIC DEFENDER'S OFFICE, and        **A TRIAL BY JURY**
LAURA AYLWARD, individually,

                        Defendants.
------------------------------------------------------------------------X

Plaintiff, Andrea Chrisjohn, by and through her attorneys, Phillips & Associates, PLLC, against The County of Dutchess, The Dutchess County Public Defender's Office, and Laura Aylward (Collectively referred to as "Defendants"), alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to 42 U.S.C. § 1981 ("Section 1981"), seeking damages to redress the injuries she has suffered as a result of being harassed and discriminated against on the basis of her race (Native American), together with creating a hostile work environment, retaliation, and constructive discharge.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is proper under 42 U.S.C. § 1981.

4. This action involves a question of Federal Law.

5. Venue is proper in this district in that a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of the State of New York. 28 U.S.C. § 1391(b).

6. On or about May 27, 2022, Plaintiff filed a dual charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights ("NYSDHR"). Defendant's conduct is in violation of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §2000e *et seq*. ("Title VII"), and the New York State Executive Law, §§ 296 *et seq*.

7. When Plaintiff receives a Right to Sue Letter from the EEOC and an Administrative Convenience Dismissal from the NYSDHR, she will seek leave to amend her Complaint to incorporate her claims under Title VII and the NYSHRL. They are incorporated here to put Defendants on notice of their liability under Title VII and the NYSHRL.

8. Furthermore, on or about December 29, 2022, Plaintiff received a Probable Cause Determination from the NYSDHR with respect to the allegations herein.

## PARTIES

9. At all times material, Plaintiff was and is a Native American female resident of the State of New York, County of Ulster.

10. At all times material, Plaintiff was and is a "person" and an "employee" entitled to protection as defined by state and federal laws.

11. At all times material, Defendant The County of Dutchess (hereinafter "Defendant The County") funds, operates, and maintains Defendant The Dutchess County Public Defender's Office (hereinafter "Defendant DCPDO").

12. At all times material, Plaintiff was an employee of Defendant DCPDO.

13. At all times material, Defendant Aylward (hereinafter "Defendant Aylward"), was employed by Defendant DCPDO as a "Clerical Supervisor."

14. As a Clerical Supervisor, Defendant Aylward directly supervised certain employees,

including Plaintiff. Additionally, Defendant Aylward had the authority to affect the terms and conditions of Plaintiff's employment.

## MATERIAL FACTS

15. On or around September 6, 2019, Plaintiff was hired to work as a "Part-Time Temporary Legal Secretary" in Defendant DCPDO's Kingston, NY Office, earning $23.78 per hour.

16. At all times material, Defendant Aylward was Plaintiff's Clerical Supervisor.

17. At all times material, Eric Knapp ("Mr. Knapp") was Defendant DCPDO's Chief Assistant, and was Defendant Aylward's direct supervisor.

18. At all times material, Thomas Angell ("Mr. Angell") was Defendant DCPDO's Department Head.

19. At all times material, Plaintiff was qualified for her position, performed her duties in a satisfactory manner, and was never the subject of formal discipline or had any performance issues.

20. Around Plaintiff's first day of work at Defendant DCPDO's Kingston Office, Defendant Aylward inquired about Plaintiff's ethnicity when she asked her, "Are you Italian?"

21. In response, Plaintiff told Defendant Aylward that she was "Iroquois Native American," to which Defendant Aylward exclaimed, "**Oh you must get a lot of money!**"

22. Plaintiff was offended by Defendant Alward's comment, as it reinforced the stereotype that associates Native Americans with gambling casinos.

23. Defendant Aylward's comments regarding Plaintiff's race (Native American) would set the stage for a campaign of inappropriate inquisitive comments targeted at Plaintiff's Native American heritage.

24. For example, on or about December 17, 2021, Mr. Angell, at a holiday Christmas party,

randomly told Plaintiff that his daughter worked in "**Indian Country**."

25. This made Plaintiff feel uncomfortable because once again, her race was being discussed by, and in front of, coworkers.

26. Nevertheless, in or around January 3, 2022, Plaintiff was offered a full-time position as a "Legal Secretary," earning $25.64 per hour, which she accepted.

27. In this new full-time role, Plaintiff worked two days per week at Defendant DCPDO's Kingston office, and three days per week at Defendant DCPDO's Poughkeepsie Office, located at 45 Market St, Poughkeepsie, NY 12601.

28. All of the below-mentioned conduct occurred at Defendant DCPDO's Poughkeepsie Office.

29. On or about February 3, 2022, in another act of discrimination, while Mr. Angell was giving his family a tour of the office, he stopped by Plaintiff's desk and told his grandchildren, "**Look**, **this is** [**Plaintiff**], **a real Native American!**"

30. On or about April 19, 2022, Plaintiff received a text message from Defendant Aylward while she was out for lunch, asking if her mother was white (the "April 19th Text Message"). Defendant Aylward's text message stemmed from a separate argument and/or conversation between Defendant Aylward and Investigator, Nancy Otis ("Ms. Otis"). Upon returning from lunch, Plaintiff approached Defendant Aylward and Ms. Otis asked Defendant Aylward what prompted her text message. **Defendant Aylward explained that she and Ms. Otis were discussing whether she (Plaintiff) was half Native American or whole blooded**. Plaintiff was uncomfortable and frustrated with the fact that her race continued to be discussed in the workplace.

31. Upon information and belief, on or about April 26, 2022, Defendant Aylward's

inappropriate behavior was reported to Mr. Knapp.

32. On or about April 27, 2022, Mr. Knapp issued Defendant Aylward a coaching memo (the "April 27th Coaching Memo"). Specifically, the April 27th Coaching Memo detailed Defendant Aylward's counseling regarding her discussions of staff members' race without their consent and outside of their presence. Moreover, Defendant Aylward was counseled regarding her duty to keep confidential information confidential as the "gatekeeper."

33. Two days later, on April 28, 2022, Defendant Aylward called a "secret meeting," with select supervisees, including Plaintiff, in which she expressed her fears and concerns with further discipline leading up to termination in connection with the April 27th Coaching Memo. Defendant Aylward also tried to minimize her discriminatory comments by comparing her discussion regarding Plaintiff's race to "**asking someone about the breed of their dog**." Defendant Aylward then ended the meeting by begging and/or pleading with all in attendance not to speak with Mr. Knapp or Chief Assistant, Alexander Rosen, regarding the complaint raised against her.

34. Plaintiff was embarrassed and humiliated by Defendant Aylward degrading remarks, especially because they were made in front of coworkers.

35. On or about April 28, 2022, Defendant Aylward Facetimed Plaintiff at approximately 8:00 P.M., seemingly intoxicated and further expressed her fear of termination due to the April 27th Coaching Memo and secret meeting.

36. Defendant Aylward actions were undoubtedly intended to intimate and/or discourage Plaintiff from further complaining about her discriminatory and retaliatory conduct.

37. Nonetheless, as a result of the "secret meeting," on or about May 3, 2022, Defendant Aylward was issued a second counseling memo (the "May 3rd Coaching Memo") in which

she was advised to refrain from retaliating against Plaintiff.

38. On or about May 3, 2022, Mr. Knapp filed a formal complaint of discrimination and harassment on Plaintiff's behalf with Defendant DCPDO (the "Formal Complaint").

39. The Formal Complaint detailed the April 27$^{\text{the}}$ and May 3rd Coaching Memo issued to Defendant Aylward. The Formal Complaint also detailed, among other things, Defendant Aylward's inappropriate discussions regarding Plaintiff's race and ethnicity and Defendant Aylward's "secret meeting" with select supervisees.

40. However, following the Formal Complaint, Defendant Aylward routinely excluded Plaintiff from lunches and team activities which she previously and regularly attended.

41. Moreover, during this same time period, Plaintiff began to feel extremely isolated as the support from her colleagues began to diminish, with coworkers refusing to collaborate or communicate with Plaintiff due to the complaints raised against Defendant Aylward.

42. In fact, by May 19, 2022, Defendant Aylward's retaliatory conduct had become so unbearable that she asked Mr. Angell if she could be transferred and/or report to a different supervisor. However, Mr. Angell denied the request and simply downplayed Defendant Aylward's unlawful conduct, telling Plaintiff that Defendant Aylward "didn't mean it" and that Defendant Aylward would "act better now."

43. Consequently, over the next several months, the retaliation and ostracization Plaintiff experienced interfered with her ability to perform the basic duties of her job.

44. For example, on or about July 17, 2022, Legal Secretary, Gina Palmero, replied to an email Plaintiff sent asking for clarification on a work assignment, stating, "**Please do not email me anymore for *anything*.**"

45. As a result, on or about September 12, 2022, realizing that Defendants had no intention of

remedying the retaliation or protecting her from further retaliation, Plaintiff had no choice but to resign from her employment with Defendants.

46. Under such circumstances, any reasonable person, like Plaintiff, would have felt compelled to resign, and, as a result, Plaintiff's resignation was, in fact, a constructive termination.

47. As a result of Defendants' actions, Plaintiff felt humiliated, degraded, victimized, embarrassed and emotionally distressed.

48. As a result of the Defendants' discriminatory and intolerable treatment of Plaintiff, she suffered severe emotional distress.

49. As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

50. Defendants' actions and conduct were intentional and intended to harm Plaintiff.

51. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages as against the Defendants.

## FIRST CAUSE OF ACTION
### *Race Discrimination in Violation of Section 1981*
**(against all Defendants)**

52. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

53. 42 U.S.C. § 1981 states in relevant part as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and

      property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

54. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 1981, by discriminating against Plaintiff because of her race (Native American), together with creating a hostile work environment, and constructive discharge.

## SECOND CAUSE OF ACTION
### *Retaliation in Violation of Section 1981*
**(against all Defendants)**

55. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

56. By the acts and practices described above, Defendants retaliated against Plaintiff for her opposition to unlawful discrimination under 42 U.S.C. §1981.

57. Defendants acted with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

58. Plaintiff is entitled to the maximum amount of damages allowed under this statute.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Section 1981, in that Defendants harassed and discriminated against Plaintiff on the basis of her race (Native American), together with creating a hostile work environment, retaliation, and constructive discharge;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants unlawful employment practices.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: July 26, 2023

**PHILLIPS & ASSOCIATES, PLLC**
*Attorneys for Plaintiff*

*/s/ Max C. Bracero, Esq.*
Max C. Bracero, Esq.
45 Broadway, Suite 430
New York, NY 10006
(212)-248-7431
mbracero@tpglaws.com